# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| JANICE BROADY (DAVIS), | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 2:22-cv-02069-JTF-atc** |
| | ) | |
| MID-SOUTH TRANSPORTATION | ) | |
| MANAGEMENT, INC., MEMPHIS | ) | |
| AREA TRANSIT AUTHORITY, and | ) | |
| THOMAS DAVIDSON, | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION ON PENDING DISPOSITIVE MOTIONS AND TO GRANT JUDGMENT IN FAVOR OF DEFENDANTS

Before the Court are three dispositive motions,[1] all filed on February 17, 2023: Defendant

Memphis Area Transit Authority's ("MATA") Motion for Summary Judgment (ECF No. 80),

Defendant Thomas Davidson's Motion to Dismiss (ECF No. 82), and Defendant Mid-South

Transportation Management, Inc.'s ("MTM") Motion to Dismiss, Alternatively for Summary

Judgment (ECF No. 83).[2]  Plaintiff Janice Broady (Davis) ("Broady") responded to Davidson's

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.

[2] Previous defendants in this case included Amalgamated Transit Union Local 713, Michael Wilson, and Gary Rosenfeld.  Wilson and the Union were voluntarily dismissed on August 10, 2022 (ECF No. 50), and Rosenfeld's motion to dismiss was granted on November 9, 2022 (ECF No. 64).  Additionally, Mayor "Jimmy Strictland" was named as a defendant in the amended complaint (ECF No. 19), but there are no facts or allegations in the Record directed at Mayor Strickland, and there is no indication that he was ever served with process in this case.  To the extent Mayor Strickland was ever a defendant in this matter, the Court recommends that those claims be dismissed for failure to service process and for the other reasons set forth herein.  In any event, only MATA, MTM, and Davidson remain as Defendants.

Motion to Dismiss on February 21, 2023 (ECF No. 84), and Davidson filed a reply brief on

March 7, 2023 (ECF No. 88).  Broady filed a single response to both MATA's and MTM's

motions on March 7, 2023 (ECF No. 89), and MATA and MTS each filed reply briefs on March

22, 2023 (ECF Nos. 90, 91).

Without leave of Court and after the time for summary judgment briefing had closed,

Broady filed an additional response to MATA's and MTS's motions on April 17, 2023 (ECF No.

93), to which MATA and MTM jointly replied on May 1, 2023 (ECF No. 94).  Despite these

violations of the Local Rules, the Court will consider these supplemental filings herein.  For the

following reasons, it is recommended that the pending dispositive motions be granted in their

entirety and that all of Broady's claims be dismissed.

## PROPOSED FINDINGS OF FACT

As a threshold matter, the Court must address which facts are undisputed for purposes of

ruling on MATA and MTM's[3] summary judgment motions.[4]  Contemporaneous with its motion

and the accompanying memorandum (ECF No. 81-1), MATA filed a statement of twenty-five

undisputed material facts (ECF No. 81).  MATA's facts are supported by excerpts and exhibits

from Broady's deposition (ECF No. 81-2) and by the declarations of Susan Schubert, MTM's

chief human resources office, and of Davidson, who previously worked for MTM as director of

transit operations (ECF Nos. 81-1, 81-3).

---

[3] MTM incorporated by reference MATA's summary judgment motion and MATA's statement
of undisputed material facts.  (ECF No. 83-1, at 2.)

[4] As discussed below, Davidson's Motion to Dismiss should be granted because Title VII of the
Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Age Discrimination
in Employment Act, 29 U.S.C. §§ 621–34 ("ADEA"), do not provide for liability against managers
and supervisors.  On its face, Broady's amended complaint therefore fails to state a claim against
Davidson as a matter of law, and separate proposed findings of fact based on the motion to
dismiss standard are therefore unnecessary.

In her initial and supplemental Responses (ECF Nos. 89, 94), Broady fails to substantively address most of the legal arguments put forth in the motions, and she fails to offer any facts or evidence in the Record to refute or dispute many of the facts submitted by MATA and MTM.  Broady also does not identify by number which of Defendants' facts she takes issue with; instead, she primarily and generally states that she should be entitled to a trial, that Defendants have not produced the documents that she is entitled to, and that a handful of the facts offered by Defendants are incorrect.  (ECF No. 89, at 2; ECF No. 94, at 1.)  MATA's and MTM's reply briefs address Broady's limited factual assertions and largely refute each of them or show how they do not create a genuine issue of material fact.  Defendants also note that Broady fails to specifically address their legal arguments and statement of undisputed material facts; that she fails to cite to the Record or otherwise relies on inadmissible hearsay, self-serving statements, and unauthenticated evidence; and that the Responses do not impact Defendants' entitlement to summary judgment.  (ECF Nos. 90, 91, 94.)

Based on the Record before the Court, Broady has failed to adequately dispute Defendants' statement of undisputed material facts.  Broady does not address the majority of Defendants' facts, and for those that she does contest, she offers no citations to the Record to support her contentions, or she only offers limited and vague citations to support a portion of her opposition to Defendants' facts.  (ECF No. 89, at 2; ECF No. 94, at 1.)  Such responses are insufficient under Local Rule 56.1(b), which requires that "[e]ach disputed fact must be supported by specific citation to the record."  Local Rule 56.1(d) further provides:

> Failure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.

*See also* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ."). The facts Broady disputes but offers insufficient citations for are therefore deemed undisputed. *See Sanders v. Baptist Mem'l Hosp.*, No. 14-CV-2414-SHL-tmp, 2015 WL 5797607, at *1 (W.D. Tenn. Aug. 19, 2015), *report and recommendation adopted*, 2015 WL 5797618 (W.D. Tenn. Oct. 1, 2015), *aff'd*, No. 15-6136 (6th Cir. Apr. 11, 2016) (collecting cases in which courts in this district deemed as undisputed facts that plaintiffs failed to respond to consistent with Local Rule 56.1(b)).

In other instances, Broady supports her statements with some citations to the Record, but her contentions merely reflect her subjective and unsupported commentary on a particular issue, provide tangential information that does not contradict Defendants' facts and legal arguments, or both. (ECF Nos. 89, at 2; 94, at 1.) Broady has thus failed to adequately bring those facts into dispute, and they are also deemed undisputed. *See Elvis Presley Enter. v. City of Memphis, Tenn.*, No. 2:18-cv-2718-SHM-atc, 2020 WL 6163564, at *3 (W.D. Tenn. Oct. 21, 2020) (explaining that, when responding to a properly supported summary judgment motion, "[t]he non-moving party has the duty to point out specific evidence sufficient to justify a jury decision in its favor") (citing Fed. R. Civ. P. 56(c)(1); *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)); *see also Jones v. Mayble*, 2:18-cv-02875-TLP-tmp, 2021 WL 1951171, at *2 (W.D. Tenn. May 14, 2021) (quoting *Garrett v. Mich. Dep't of Corr.*, No. 3:18-cv-12844, 2020 WL 5223800, at *5 (E.D. Mich. July 13, 2020)) ("[W]hen opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and . . . a party's status as a pro se litigant does not alter this duty on a summary judgment motion.").

Furthermore, Broady's assertions regarding allegedly incomplete discovery is of no consequence. (ECF Nos. 89, at 2; 94, at 1.) Discovery in this case closed on November 22, 2022, and the time for Broady to gather information to refute Defendants' summary judgment proof has long since passed. (ECF No. 52.) To the extent Broady has failed to demonstrate a dispute with Defendants' facts because she claims she lacks sufficient information to do so, those facts are deemed undisputed. *See Baxter Bailey Invs., Inc. v. Mars Petcare US, Inc.*, No. 11-cv-2860-STA-dkv, 2012 WL 1965612, at *1 n.1, *2–3 (W.D. Tenn. May 31, 2012) (denying the plaintiff's motion for additional discovery and deeming certain facts admitted for purposes of summary judgment when the plaintiff claimed he lacked sufficient information to respond but discovery had closed); *Dodd v. Chrysler Grp. LLC*, No. 1:11-cv-01073-JDB, 2012 WL 1565640, at *2 n.2–3 (W.D. Tenn. May 1, 2012) (deeming certain facts admitted for the purposes of summary judgment after the plaintiff asserted that he was "without sufficient information to admit or deny" them); *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 747 n.13 (M.D. Tenn. 2019), *case dismissed*, No. 19-5369, 2019 WL 5079251 (6th Cir. Sept. 18, 2019) (accepting as undisputed those facts that were objectively verifiable, despite the plaintiff's assertion that he lacked sufficient information to assess their truth but made no attempt to offer contrary evidence).

Given the foregoing, the Court finds the following facts are undisputed for purposes of the summary judgment motions:

MATA is the public transportation provider for the Memphis, Tennessee area. (ECF No. 81 ¶ 1.)[5] Though MATA is governed by a board of directors, it does not have any employees.

_____

[5] Broady does not address the facts in this paragraph. She does attach an NLRB case search result to her second Response, apparently in an effort to show that MTM does business as MATA. (ECF No. 93-1, at 1.) However, that case search only reflects that a case was filed

(*Id.*)  Instead, MATA contracts with MTM, a private corporation that manages and operates MATA, including the hiring, firing, and management of drivers of MATA buses.  (ECF No. 81 ¶ 1.)  Broady applied for employment with MTM, accepted the employment offer by MTM, and was compensated by MTM.  (*Id.* ¶ 2.)  Broady was employed by MTM to drive MATA buses until her termination on June 1, 2021.  (*Id.* ¶¶ 2, 22.)

As of April 12, 2021, and through the date of Broady's termination, vehicular collisions involving MATA buses were governed by a Discipline Code of Conduct ("the Code").  (*Id.* ¶ 19.)[6]  The Code makes clear that certain accidents can result in immediate termination of employment: "SPECIAL NOTATION: Any accidents classed as preventable could result in discharge if the nature of the accident indicates that there was gross negligence, extensive damage and/or serious injuries."  (*Id.*)  This admonition is reiterated in the Code's discussion of intersections: "Accidents with gross negligence-injury and medium to heavy damage can result in discharge on the first offense."  (*Id.* ¶ 20.)

On April 12, 2021, Broady was operating a MATA bus ("Unit 424") on Watkins Street in Memphis, Tennessee.  (*Id.* ¶¶ 3–5.)[7]  At approximately 8:00 p.m., Unit 424 was involved in a collision with another vehicle at the intersection of Watkins Street and Chelsea.  (*Id.*)

---

against MTM with the d/b/a designation, not that MTM is actually doing business as MATA.  In any event, even if Broady's submission were relevant evidence of MTM's d/b/a designation, it does not establish a genuine dispute as to these facts.  These facts are therefore deemed undisputed.

[6] Broady does not address the facts in this paragraph.  These facts are therefore deemed undisputed.

[7] Broady does not dispute the facts in this paragraph.  (ECF No. 89, at 2–3.)

MTM installs cameras on MATA buses, which record events on and around the buses during their operation for safety and security purposes.  (*Id.* ¶ 6.)[8]  These recordings are created, stored, and maintained in the ordinary course of business.  (*Id.*)  At the time of the accident at issue, Unit 424 had eight cameras that were simultaneously filming and recording the areas in and around the bus as the vehicle was being operated by Broady.  (ECF No. 81 ¶¶ 6–7.)[9] Davidson, then the Director of Transit Operations for MTM, was involved in the investigation of the April 12, 2021 collision involving Unit 424, and he was the MTM official tasked with determining whether the accident was preventable or not, for purposes of determining whether Broady should be terminated.  (*Id.* ¶¶ 8, 21.)  As part of the investigation, Davidson reviewed the video footage pulled from Unit 424.

The Court has reviewed the video as well and finds that it largely comports with the description in Davidson's declaration.  The video's various angles show Broady operating Unit 424 as it approaches the intersection of Watkins Street and Chelsea Avenue, driving in the right-turn-only lane.  (ECF No. 81-3, Ex. A.)  As the bus approaches the intersection, its speed decreases significantly, the sound of the engine reflects deceleration as the pitch gets lower, and the brake lights illuminate.  (*Id.*)  Then, as the bus approaches the crosswalk, it almost comes to a stop[10] and then accelerates straight through the intersection and through the red traffic signal.

---

[8] Broady does not address the facts in this paragraph.  These facts are therefore deemed undisputed.

[9] The video of the accident at issue is attached as Exhibit A to Davidson's Declaration, and a copy was provided to the Court.  (ECF No. 81-3, Ex. A.)  The video contains eight camera angles—with associated audio recording for some of the angles—and depicts Unit 424 prior to, during, and immediately after the accident.  The video has a run time of approximately ten minutes, with the accident occurring at 20:01:53.  Importantly, Broady does not contest that the video is authentic, accurate, and admissible.

[10] Davidson describes the bus as coming to a "complete stop" (ECF No. 81-3 ¶ 9), but the video shows that it does not.  This discrepancy between a complete stop and a nearly complete stop,

(ECF No. 81-3, Ex. A.)  As the bus accelerates through the intersection, the brake lights turn off

and the sound of the engine reflects acceleration.  (*Id.*)  In the video (most notably in camera

angle 424_Front Door_H), the engine is clearly heard revving up, increasing in both volume and

pitch, as the bus accelerates.  (*Id.*)[11]  The video then shows that, when Unit 424 is three quarters

---

however, is not material, as the video shows that Broady was able to apply the brakes to slow the
bus down and that she then accelerated through the intersection, contrary to her version of
events.

[11] Broady disputes that she accelerated through the intersection; instead, she claims that she
"tried to stop and that the bus kept going.  It took off because there were no brakes."  (ECF No.
89, at 2.)  However, other than her subjective claim that the brakes on Unit 424 failed, all of the
evidence in the Record reflects that Broady affirmatively accelerated the bus through the
intersection and that the brakes did not fail.

 First, the video clearly refutes Broady's version of events, as described above, such that
she has not shown a genuine issue of material fact with respect to the cause of the accident that
might defeat summary judgment.  *See Scott v. Harris*, 550 U.S. 372, 379–80 (2007) (holding that
courts should review and consider reliable video evidence at the summary judgment stage
"[w]hen opposing parties tell two different stories," and if one of them "is blatantly contradicted
by the record, so that no reasonable jury could believe it, a court should not adopt that version of
the facts for purposes of ruling on a motion for summary judgment").

 Second, the events captured in the video during and immediately after the accident render
Broady's story implausible.  Broady never mentions brake failure during the approximately eight
recorded minutes after the accident.  Instead, Broady tells numerous people on multiple
occasions—including a police officer, passengers, and other MTM personnel—that the other
vehicle ran the red light (*see, e.g.*, ECF No. 81-3, at 6, 20:03:45, 20:07:52, 20:08:57, 20:09:25)
and that Broady "was coming straight across . . . and I guess he ran the light."  (*Id.* at 20:09:04–
13.)

 Third, Broady's account of what occurred has changed multiple times since the event.
The night of the accident, she said the red car that hit the bus ran a red light.  (*Id.*)  In her original
complaint, she alleged both that "[s]omeone in a car run into back of my Bus" and that she tried
to stop the bus as "the light change from yellow to red."  (ECF No. 1-3, at 2–3.)  Now she says
that she "tried to stop and that the bus kept going" and "took off because there were no brakes."
(ECF No. 89, at 2.)  Not only are each of these stories contradicted by the video evidence, they
are inconsistent with each other.

 Finally, Broady notes that the traffic citation she was issued for the collision was
ultimately dismissed, arguing that dismissal as evidence she was not at fault.  (ECF No. 89, at 2.)
As Defendants contend, however, that citation was dismissed nolle prosequi, which is not an
acquittal on the merits, *Dortch v. United States*, 203 F.2d 709, 710 (6th Cir. 1953), and in any
event is based on a criminal standard different from the Code's requirement that the accident be
determined "preventable."  Broady is unable to bring into legitimate dispute any of the events
captured in the video, and thus the events as described above are deemed undisputed.

of the way through the intersection, it is struck by a red vehicle driving through the intersection on Chelsea Avenue.  (ECF No. 81-3, Ex. A.)

After the accident, the video reflects that Broady did not tell anyone, including a police officer on the scene, that Unit 424's brakes failed.  (*Id.*)  Instead, the video reflects that Broady told at least three people, including a police officer, that the other vehicle ran the red light—a contention that itself is belied by the video, which shows that the light for the cross traffic had just turned yellow before impact.  (*Id.*)  The video also shows that Broady asked her passengers to confirm that the red vehicle ran the red light. (*Id.*)

Additionally, none of the documentation from the accident—including a Supervisor's Accident Report, a police report, and medical records prepared when Broady was treated for her injuries—reflects that Broady claimed the brakes on Unit 424 had failed.  (ECF No. 81 ¶ 15.)[12] Rather, each of those documents indicates that, on the night of the collision, Broady claimed that the other vehicle, and not Unit 424, ran the red light.  (*Id.*)[13]  This fact is consistent with Unit 424's maintenance records that showed its brakes were in proper working order less than a week prior to the accident.  (ECF No. 81 ¶ 16.)[14]

---

[12] Broady does not address this fact, and it is therefore deemed undisputed.

[13] Broady does not address this fact, and it is therefore deemed undisputed.

[14] Broady alleges without support that Defendants did not perform proper "maintenance on their own equipment."  (ECF No. 89, at 2.)  Such unsupported statements are insufficient to show a genuine issue of material fact.  *See Elvis Presley Enter.*, 2020 WL 6163564, at *3.  Broady has pointed to no Record evidence that Unit 424 was not properly maintained.  Instead, Defendants have demonstrated that it is undisputed that the brake linings were inspected and found to be in proper working order less than a week before the collision.  (ECF No. 81 ¶ 16.)
    Broady attempts to excuse her lack of evidence by claiming that Defendants have failed to produce maintenance records despite being ordered to do so.  (ECF No. 89, at 2.)  Defendants respond that all such documents have been produced.  (ECF No. 90, at 7–8; ECF No. 94, at 2–3.)  In any event, such discovery arguments are irrelevant at this stage.  *See Baxter Bailey Invs., Inc.*, 2012 WL 1965612, at *1 n.1, *2–3.  These facts are therefore deemed undisputed.

Several individuals—including Broady, two MATA passengers, and the driver and passengers of the other vehicle—were injured as a result of the accident and transported to hospitals via ambulance.  (*Id.* ¶ 17.)[15]   The MATA/MTM Supervisor Report of the collision reflects a determination of "medium damage" to Unit 424 because of the accident.  (*Id.* ¶ 18.)

Based on the video, in which Broady was observed proceeding straight through the intersection despite the red light, Davidson determined that the collision was preventable.  (ECF No. 81 ¶ 21.)[16]  Because of this determination, and because multiple injuries and significant property damage occurred, Davidson decided to terminate Broady's employment immediately as of June 1, 2021, pursuant to the Code, rather than applying the progressive discipline process.  (ECF No. 81 ¶¶ 20–22.)[17]

On December 17, 2021, Broady filed a Charge of Discrimination with the EEOC, alleging discrimination on the basis of her gender and age.  (*Id.* ¶ 25.)[18]  The Charge does not include allegations of sexual harassment, retaliation, or that Broady engaged in protected conduct.  (ECF No. 89, at 3.)

## PROPOSED CONCLUSIONS OF LAW

### I.    Standard of Review for Failure to State a Claim

To determine whether Broady's complaint states a claim for which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as articulated in

---

[15] Broady does not address the facts in this paragraph.  These facts are therefore deemed undisputed.

[16] Broady does not dispute or address that the accident was deemed preventable by Davidson. As discussed above, she contends that determination was wrong, but Broady's version of events is "blatantly contradicted" by the video of the accident, which Broady does not argue is unreliable, unauthentic, or inadmissible.  *See Scott*, 550 U.S. at 379–80.

[17] Broady does not address this fact, and it is therefore deemed undisputed.

[18] Broady does not dispute the facts of this paragraph.  (ECF No. 89, at 2–3.)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim

showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the

. . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations

and quotations omitted). The Court "construes the complaint in a light most favorable to [the]

plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly

suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir.

2012). Although a decision on a motion for failure to state a claim "rests primarily upon the

allegations of the complaint, 'matters of public record, orders, items appearing in the record of

the case, and exhibits attached to the complaint also may be taken into account.'" *Barany-

Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d

493, 502 (6th Cir. 2001)).

   Pleadings provide facial plausibility when they present "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[] are not

entitled to the assumption of truth. While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also*

*Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket

assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to

see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature

of the claim, but also 'grounds' on which the claim rests.").

   "[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards

than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir.

2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); s*ee also Vandiver v. Vasbinder*, 416

F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to *pro se*

complaints, "however inartfully pleaded").  Nevertheless, *pro se* litigants "are not exempt from

the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*,

783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372,

376 (6th Cir. 2006)); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)

("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf

of *pro se* litigants.  Not only would that duty be overly burdensome, but it would also transform

the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are

properly charged with protecting the rights of all who come before it, that responsibility does not

encompass advising litigants as to what legal theories they should pursue."); *Brown v.

Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a

plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*,

518 F.2d 1167, 1169 (6th Cir. 1975)).  "A pro se complaint must still 'contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Shelby v.

Greystar Mgmt. Servs., L.P.*, No. 2:17-cv-02650-SHM-cgc, 2018 WL 386647, at *2 (W.D. Tenn.

Jan. 11, 2018) (quoting *Barnett v. Luttrell*, 414 F. App'x. 784, 786 (6th Cir. 2011).

## II.    Standard of Review for Summary Judgment Motions

Courts evaluate motions for summary judgment under Federal Rule of Civil Procedure

56(a).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of

factually unsupported claims or defenses."  *Harper v. City of Cleveland*, 781 F. App'x 389, 392

(6th Cir. 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).  Thus, summary

judgment is appropriate "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*

*Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017) ("Summary

judgment is proper when, viewing the evidence in the light most favorable to the nonmoving

party, there is no genuine dispute as to any material fact and the moving party is entitled to

judgment as a matter of law.") (quoting *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*,

759 F.3d 522, 526 (6th Cir. 2014)).  "A material fact is one 'that might affect the outcome of the

suit,' and a genuine dispute exists 'if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'"  *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The moving party bears the burden

of showing that no genuine issues of material fact exist."  *McClellan v. Midwest Machining, Inc.*,

900 F.3d 297, 302 (6th Cir. 2018) (citing *Celotex*, 477 U.S. at 324).

In evaluating summary judgment motions, a court must "draw all reasonable inferences

in favor of the nonmoving party."  *Harper*, 781 F. App'x at 392 (citing *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Nevertheless, "[t]he nonmoving party

must do more than simply 'show that there is some metaphysical doubt as to the material facts.'"

*Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 652 (W.D. Tenn. 2020) (quoting *Lossia*

*v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018)).  A properly supported motion for

summary judgment will not be defeated by conclusory allegations, speculation, or

unsubstantiated assertions.  *Bradley v. Wal-Mart Stores E., LP*, 587 F. App'x 863, 866 (6th Cir.

2014) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).  Reliable audio/video

evidence that "blatantly contradict[s]" the nonmoving party's version of events does not create

an issue of fact because, "at the summary judgment stage, facts must be viewed in the light most

favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott*,

550 U.S. at 380 (quoting Fed. R. Civ. P. 56(c)).  In determining whether a dispute of material

fact exists, "[t]he court need consider only the cited materials, but it may consider other materials

in the record." Fed. R. Civ. P. 56(c)(3).  At the same time, "[a] district court is not required to

search the entire record to establish that it is bereft of a genuine issue of material fact," as

"judges are not like pigs, hunting for truffles that might be buried in the record." *Emerson v.*

*Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (citations, quotations, and

alterations omitted).

"Although summary judgment must be used carefully, it 'is an integral part of the Federal

Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination

of every action[,] rather than a disfavored procedural shortcut.'" *Stevens-Bratton*, 437 F. Supp.

3d at 652 (quoting *FDIC v. Jeff Miller Stables*, 573 F.3d 289, 294 (6th Cir. 2009)).  Ultimately,

"[w]hen the non-moving party fails to make a sufficient showing of an essential element of his

case on which he bears the burden of proof, the moving parties are entitled to judgment as a

matter of law, and summary judgment is proper." *Peterson v. Medtronic, Inc.*, No. 2:17-cv-

02457-MSN-atc, 2020 WL 6999225, at *4 (W.D. Tenn. Sept. 30, 2020) (quoting *Martinez v.*

*Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013)).  "These standards

apply regardless of a party's *pro se* status; the liberal pleading standard for *pro se* parties is

inapplicable once a case has progressed to the summary judgment stage." *Almasri v. Valero Ref.*

*Co. – Tenn., LLC*, No. 2:20-cv-02863-SHL-tmp, 2022 WL 895732, at *3 (W.D. Tenn. Feb. 18,

2022), *report and recommendation adopted*, 2022 WL 891842 (W.D. Tenn. Mar. 25, 2022)

(citations and internal quotations omitted).

14

## III.    Davidson's Motion to Dismiss

Davidson's Motion to Dismiss should be granted, as Broady has failed to state any

cognizable claims against him in her Amended Complaint.  Broady alleges only Title VII and

ADEA claims against the remaining Defendants, and Davidson cannot be held individually liable

under either statutory scheme.  *See, e.g.*, *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 406 (6th Cir.

1997) ("Title VII's remedial provisions are incompatible with the imposition of liability on

individual employees for violations of the Act."); *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir.

1999) (collecting cases holding that Title VII's "sister civil rights statutes," including the ADEA,

do not include supervisors within the statutory definition of "employer" and thus cannot be

applied to impose personally liable for supervisor discrimination).   Nothing contained in

Broady's Response to the Motion to Dismiss changes this result.  (ECF No. 84, at 1–3.)  As was

the case when Judge Fowlkes granted Rosenfield's motion to dismiss, "Broady has not stated

any viable claims against" Davidson, his Motion should be granted, and all claims against him

should be dismissed.[19]  (ECF No. 64, at 4–5.)

## IV.    Broady's Title VII and ADEA Claims Against MATA

MATA makes two overall arguments in its Motion for Summary Judgment: (1) MATA

was not Broady's employer for purposes of Title VII and the ADEA, such that she cannot

recover under those statutes against MATA; and (2) even if MATA were her employer, Broady

cannot establish a prima facie case against MATA, nor can she rebut the legitimate, non-

discriminatory reasons for the termination of her employment.  The Court need not address

---

[19] Because the Court recommends dismissal based on Broady's failure to state a claim against
Davidson, the Court will not address his alternative arguments concerning Broady's alleged
failure to properly serve him.

MATA's first argument, as MATA should prevail on the merits of Broady's Title VII and ADEA claims.

"Title VII provides, in pertinent part, that '[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin.'" *Jenkins v. Plumbers & Pipefitters Union Loc. No. 614*, 971 F. Supp. 2d 737, 744 (W.D. Tenn. 2013) (quoting 42 U.S.C. § 2000e-2(a)).  Similarly, the ADEA prohibits employers from terminating employees "because of such individual's age." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323 (6th Cir. 2021) (quoting 29 U.S.C. § 623(a)(1)).

Under Title VII and the ADEA, a plaintiff may establish a case of unlawful discrimination through direct or circumstantial evidence.  *Craig v. Tenn. Dep't of Children's Servs.*, No. 2:17-cv-02522-SHM-cgc, 2019 WL 5092401, at *4 (W.D. Tenn. Aug. 6, 2019), *report and recommendation adopted*, 2019 WL 4093773 (W.D. Tenn. Aug. 29, 2019) (citing *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012)); *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008)).  "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).

MATA asserts, and Broady does not contest, that she has not submitted any direct evidence of either sex or age discrimination.[20]  She must therefore demonstrate discrimination

---

[20] In her EEOC Charge, Broady alleges that unnamed people said "she won't be able to walk to the bus, it's too far" and "she to [sic] old."  (ECF No. 89, at 3.)  As an initial matter, Broady has not provided any admissible evidence to support the allegations in her EEOC Charge.  But even assuming these unnamed people made these comments on one or more occasions, and even if Broady had provided evidence that these comments occurred, they are insufficient to support a

based on indirect or circumstantial evidence.  Unlike direct evidence of discrimination, "circumstantial evidence does not 'on its face establish discriminatory animus,' but discrimination may be reasonably inferred."  *Golden v. Mirabile Inv. Corp.*, 724 F. App'x 441, 446 (6th Cir. 2018) (quoting *Ondricko*, 689 F.3d at 649).

Claims of discrimination based upon circumstantial evidence are evaluated under the burden-shifting framework first set out in *McDonnell Douglas* and later modified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  *Jenkins*, 971 F. Supp. 2d at 744.  Under this three-step process, Broady carries the initial burden of establishing a *prima facie* case of discrimination.  *Id.*  "The *prima facie* showing requirement is not onerous."  *Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 396 (6th Cir. 2008).  "The sole function of the prima facie stage of the burden-shifting framework is to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons for the employer's treatment of the plaintiff . . . .  It is not meant to stymie plaintiffs."  *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (citations and alterations omitted).  Moreover, it is improper to consider "the employer's nondiscriminatory reason for the adverse employment action at the prima facie stage of the case," as it "improperly conflates the distinct stages of the

---

direct evidence claim.  *See Goller v. Ohio Dept. of Rehab. & Corr.*, 285 F. App'x 250, 255 (6th Cir. 2018) ("[D]erogatory name-calling" by a shift supervisor "cannot constitute direct evidence of discrimination" on its own "because a significant inference would be required for a factfinder to conclude" that the supervisor's animosity towards a protected class motivated the overall manager's decision to terminate the plaintiff); *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002) (holding that the plaintiff did not present direct evidence of discrimination supporting an ADEA claim even when those responsible for refusing to rehire the plaintiff admitted that they considered her prior complaints, including age discrimination-related complaints, in their decision).  Here, Broady has not identified the people who allegedly made the offensive remarks, and she certainly has not alleged or proven that Davidson—the person who determined that she should be terminated—made any age-related comments to her.  She has therefore failed to present direct evidence of discrimination.

*McDonnell Douglas* inquiry." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016) (citing *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 662–63, 666 (6th Cir. 2000)).

If a plaintiff satisfies the *prima facie* burden, "a presumption of unlawful discrimination arises against the employer, who then bears the burden of articulating 'some legitimate, non-discriminatory reason for the employee's rejection.'" *Jenkins*, 971 F. Supp. 2d at 744–45 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004)). If the employer establishes such a reason at this second step, the burden shifts back to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 745 (quoting *DiCarlo*, 358 F.3d 414–15).

"At the motion for summary judgment stage, 'a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry.'" *Id.* (quoting *Cline*, 206 F.3d at 661). "Importantly, at the summary judgment stage of litigation, courts should not allow 'th[is] burden-shifting analysis [to] obfuscate the appropriate question— whether there exists a genuine issue of material fact.'" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011)).

A.    Broady's *Prima Facie* Case (*McDonnell Douglas* Step One)

To demonstrate a *prima facie* case in the context of a claim for sex or age discrimination under Title VII or the ADEA, a plaintiff must show: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone from outside the protected class or was treated differently than similarly situated non-protected employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707– 09 (6th Cir. 2006) (Title VII sex claim) (citations omitted); *Shah v. NXP Semiconductors USA,*

*Inc.*, 507 F. App'x 483, 487 (6th Cir. 2012) (citing *Martin*, 548 F.3d at 410) (ADEA claim). In this case, Defendants challenge only the fourth element.

"To satisfy the similarly situated requirement, a plaintiff must show that the comparable employee is similar 'in all of the *relevant* aspects.'" *Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 480 (6th Cir. 2008) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *see also Willard*, 952 F.3d at 809 (noting that at the *prima facie* stage courts "typically compare a plaintiff to specific non-protected employees to determine whether the other employee is similarly situated in all relevant respects"). The individuals with whom the plaintiff seeks to compare her treatment must have "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Warren v. Hollingsworth Mgmt. Servs., LLC*, No. 22-1064, 2022 WL 18542504, at *4 (6th Cir. Dec. 19, 2022) (quoting *Ercegovich*, 154 F.3d at 352). "The 'same supervisor' analysis is focused less on whether the comparable employee shared the same immediate supervisor as the plaintiff and more on whether the individual who ultimately meted out the discipline to both individuals was the same." *Barry*, 276 F. App'x at 481 (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 459 (6th Cir. 2003)). In addition, to determine whether other employees are similarly situated, courts look at "whether other employees engaged in acts of 'comparable seriousness.'" *Id.* (quoting *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002)).

Here, even assuming (without deciding) that MATA was Broady's employer for purposes of Title VII and the ADEA, Broady has failed to adequately allege or show that any specific non-protected employees were treated differently than she was. Broady merely alleges that other bus

drivers have had traffic accidents before and after her accident, that they are "still working for MATA," and that "other Bus Drivers, Male and Female, were not disciplined or discharged" after a traffic accident.  (ECF No. 1-3, at 2; ECF No. 89, at 3.)  She has not shown that specific non-protected bus drivers were treated better after having as serious an accident as she did—an accident deemed preventable and involving injuries to multiple people, "medium" damage to her bus, significant damage to the other vehicle, and no admissible or reliable evidence of mechanical failure.  (ECF No. 81 ¶¶ 9–18, 21.)  Indeed, other than referencing an unnamed coworker's accident for which he was "at fault," Broady provides no details about those accidents, whether the drivers were non-protected, or whether they had the same supervisor. (*See* ECF No. 1-3, at 2.)

Broady has failed to identify any driver who "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Ercegovich*, 154 F.3d at 352 (citations omitted).  Thus, she has failed to show the fourth element of her *prima facie* case, and the Court recommends that summary judgment be granted to MATA on Broady's Title VII and ADEA claims.

B.    MATA's Nondiscriminatory Justification (*McDonnell Douglas* Step Two)

Even if she had shown the fourth element of her *prima facie* case, Broady's claims would fail at steps two and three.  At the second *McDonnell Douglas* step, the employer's burden is low and "is satisfied if he simply 'explains what he has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'" *Jackson*, 814 F.3d at 779 (quoting *Burdine*, 450 U.S. at 256).  That obligation "is merely a burden of production, not of persuasion, and it does not involve a credibility assessment."  *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585–86 (6th Cir. 2009).  Ultimately, a "defendant must clearly set forth, through the introduction of admissible evidence,

reasons for its actions which, if believed by the trier of fact, would support a finding that
unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v.
Hicks*, 509 U.S. 502, 507 (1993) (citations and quotations omitted).

MATA has met its burden by demonstrating that the reason it fired Broady was the
seriousness of her accident and because the Code allowed for immediate termination for
preventable accidents involving "gross negligence, extensive damage and/or serious injuries."
(ECF No. 81 ¶¶ 20–21.)  If the trier of fact were to believe MATA's evidence that it fired Broady
for having a preventable accident involving her accelerating through a disregarded red light,
injuries to multiple people, "medium" damage to her bus, significant damage to the other
vehicle, and no admissible or reliable evidence of mechanical failure (*id.* ¶¶ 9–18, 21), that
evidence would support a finding that MATA's decision was not a result of unlawful
discrimination.  Having provided an adequate non-discriminatory justification, MATA shifts the
burden to Broady to demonstrate that the justification is merely pretextual under *McDonnell
Douglas*'s third step.

C.    Whether MATA's Nondiscriminatory Justification Was Pretext (*McDonnell
      Douglas* Step Three)

At the final stage of the *McDonnell Douglas* analysis, "the presumption of discrimination
is gone and the plaintiff must demonstrate that the employer's proffered nondiscriminatory
reason was not the true reason for the employment decision, but rather a pretext for
discrimination."  *Provenzano*, 663 F.3d at 815 (citing *Burdine*, 450 U.S. at 256).  A plaintiff can
demonstrate pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not
actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the
challenged conduct."  *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (citation
omitted).  "Regardless of which option is used, the plaintiff retains the ultimate burden of

21

producing sufficient evidence from which [a] jury could reasonably reject [the defendant's]

explanation and infer that the defendant[] intentionally discriminated against him." *Willingham*

*v. Regions Bank*, No. 2:09-cv-02289, 2010 WL 2650727, at *5 (W.D. Tenn. July 1, 2010)

(quoting *Johnson*, 319 F.3d at 866) (internal citation omitted).

Ultimately, "a reason cannot be proved to be 'a pretext for discrimination' unless it is

shown both that the reason was false, and that discrimination was the real reason." *St. Mary's*

*Honor Ctr.*, 509 U.S. at 515. In attempting to establish pretext, Broady's conclusory allegations

and subjective beliefs are "wholly insufficient evidence to establish a claim of discrimination as

a matter of law." *Neff v. City of E. Lansing*, 724 F. App'x 448, 452–53 (6th Cir. 2018) (quoting

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992)). Ultimately, "Title VII 'does

not require employers to make perfect decisions, nor forbid them from making decisions that

others may disagree with. Rather, employers may not hire, fire, or promote for impermissible,

discriminatory reasons.'" *Horn v. City of Cleveland*, 674 F. App'x 511, 518 (6th Cir. 2017)

(quoting *Browning v. Dep't of Army*, 436 F.3d 692, 698 (6th Cir. 2006)).

Broady's repeated contentions that she was not responsible for the collision can

arguably be construed as a position that Defendants' proffered reasons for firing her are pretext

because they have no basis in fact. As discussed above, however, it is Broady's version of

events that is unsupported by the facts in the Record, most notably the video evidence. That

video indisputably shows that Broady slowed down as she approached the red light in the

right-turn-only lane, demonstrating that the bus's brakes were working, and that, instead of

stopping or turning right, she accelerated and proceeded through the intersection, though the

light was still red. The video thus belies Broady's various contradictory contentions that the

bus's brakes were not working, that someone rear-ended the bus, that the light changed from

22

yellow to red, and that the car on the cross street that hit the bus ran a red light.  Broady has

failed to create a genuine dispute of material fact that Defendants' proffered reason for

terminating her—her participation in a preventable accident involving damage and injury—

lacks a basis in fact.

In addition, Broady has failed to offer any evidence, or even sufficient allegations,

demonstrating any other basis for finding pretext.  She has offered nothing to show the

collision did not actually motivate Defendants' decision to fire her.  She has no basis for

arguing that Defendants' reason was insufficient to warrant her termination, as the Code

allows for immediate termination for serious, preventable accidents.  (*See* ECF No. 81 ¶ 20.)

Though Broady may believe her firing was unjust or unfair, she has not provided any adequate

allegations or admissible evidence that might satisfy any of the elements of pretext.  As a

result, the Court recommends that summary judgment be granted to Defendants on Broady's

Title VII and ADEA claims.

## V.    Broady's Title VII and ADEA Claims against MTM

MTM raises three overall arguments in its Motion: (1) MTM was never properly served

with process in this case and should be dismissed; (2) Broady failed to file an EEOC Charge of

Discrimination against MTM, and her deadline to do so has expired; and (3) MTM is entitled to

summary judgment for all the same reasons addressed in MATA's Motion.  The Court need not

address MTM's first two arguments, as MTM is entitled to summary judgment on the merits of

Broady's claims for the same reasons raised by MATA and addressed above in Section IV.

Here, all applicable facts have been presented and all issues fully briefed, and the Court's

recommendations herein would be the same whether the correct employer/defendant were

MATA or MTM.  As a result, the Court recommends that summary judgment be granted to

MTM on Broady's Title VII and ADEA claims.

## VI.    Broady's Harassment Allegations and Retaliation Claim

The Court will briefly address two additional issues raised by the parties in their

summary judgment briefing.  First, in Broady's Response, she mentions for the first time that she

allegedly suffered sexual harassment at work and that she reported this harassment to Davidson.

(ECF No. 81, at 2.)  However, an alleged claim for sexual harassment under Title VII is not

properly before the Court, as Broady failed to exhaust her administrative remedies by asserting

such a claim with the EEOC.  *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir.

2010) (holding that failure to include claims by way of the check boxes on the EECO charge

form or in its narrative portion prevents those claims from proceeding in court).  Furthermore,

"Plaintiffs may not expand claims or assert new theories in response to summary judgment."

*Williams v. Defenders, Inc.*, No. 2:19-cv-02567-SMH-cgc, 2021 WL 4896581, at *7 (W.D.

Tenn. Oct. 20, 2021) (collecting cases); *see also Woody v. Aurora Com. Corp.*, No. 15-cv-2747-

SHM-tmp, 2018 WL 1884826, at *3 (W.D. Tenn. Apr. 19, 2018) ("The Sixth Circuit has

repeatedly held that a non-moving plaintiff may not raise new claims for the first time in

response to an opposing party's summary judgment motion.") (citations omitted).  To the extent

that Broady is now attempting to assert a Title VII sexual harassment claim, such a claim should

be dismissed as to all Defendants.

Second, in her Amended Complaint, Broady checked a box indicating that she was

attempting to bring a Title VII retaliation claim against Defendants.  (ECF No. 19, at 3.)

However, her Amended Complaint does not identify any alleged protected activity for which she

suffered retaliation.  A retaliation claim "requires proof, even at the prima facie state, that the

unlawful retaliation would not have occurred but for [the defendant's] protected activity."

*Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 46 (6th Cir. 2020).  In this case, Broady's

Amended Complaint lacks any allegations that she engaged in any protected activity prior to the

purported retaliation.  Furthermore, Broady did not include a retaliation claim in either her

original Complaint or in her EEOC Charge.  As a result, her retaliation claim is not properly

before the Court, and this claim should also be dismissed as to all Defendants.  *See Abeita v.*

*TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998) (holding that the plaintiff's

retaliation claim was properly dismissed when "the plaintiff neither checked the retaliation box

nor described anything that indicates that she might have a retaliation claim" in her EEOC

charge and when "[a]ll of the alleged retaliation occurred before she filed her EEOC charge.").

## RECOMMENDATION

For the foregoing reasons, this Court recommends that Davidson's Motion to Dismiss

be granted and that MATA and MTM be granted summary judgment as to all of Broady's

claims.  As such a ruling would resolve all claims at issue in this case in Defendants' favor, the

Court further recommends that this case be dismissed with prejudice.

Respectfully submitted this 26th day of July, 2023.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommendation
disposition, a party may serve and file written objections to the proposed findings and
recommendations.  A party may respond to another party's objections within fourteen (14)
days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within
fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.